**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF MISSISSIPPI**

**UNITED STATES OF AMERICA**

**v.** **CRIMINAL NO. 3:24CR00152-SA-RP**

**YOHANNES TEKIE GEBREZGHI**

**GOVERNMENT'S RESPONSE IN OPPOSITION**
**TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

The Defendant, Yohannes Tekie Gebrezghi, was indicted by a federal grand jury for the possession of a firearm as a prior convicted felon, firearms trafficking, and the unlawful dealing of firearms. The charges stem from an investigation that initiated during the search and seizure of firearms and a cellular device following a traffic stop. Gebrezghi has filed a Motion to Suppress Evidence (Doc. #112), and in response, the United States would respectfully show unto the Court the following:

## Background

The government expects the testimony and evidence admitted at the suppression hearing to prove as follows:

On September 26, 2023, two Mississippi State Highway Patrol Troopers, Wade Jones and Adam Zachary, patrolled Interstate 22 in Union County, Mississippi in a single marked vehicle. At around 2:10 p.m., Trooper Zachary, the driver, passed a white Toyota Four-Runner and then looked back at the vehicle in the mirror. Trooper Zachary observed the SUV drift to the right to the white line.[1]

Trooper Zachary slowed down to allow the SUV the ability to catch up and pass the MHP vehicle. When the SUV did not pass, Trooper Zachary pulled to the shoulder of the highway so

---

[1] Due to the conduct occurring behind the troopers' vehicle, the front facing dash camera did not capture the incident.

the SUV would pass by. Zachary then immediately pulled back onto the interstate behind the SUV, and the state troopers observed the SUV drift toward the white line a second time. The officers initiated a traffic stop for the Mississippi offense of careless driving.

Trooper Jones approached the SUV on the driver's side and smelled the odor of marijuana coming from the inside the vehicle. He asked Gebrezghi to exit the vehicle. Trooper Jones then informed Gebrezghi the reason for the stop.[2]

In speaking with the state troopers, Gebrezghi stated he had a small amount of marijuana right inside the driver side door. Trooper Jones informed Gebrezghi the officers would search the vehicle and asked the passenger of the vehicle to step out. The troopers did not ask for consent and proceeded with the search.

During the search, Trooper Jones noted the passenger window would not roll all the way down. He moved the passenger door back and forth and the troopers noticed a rattling inside the door. Inside the door panel, the officers found several handguns, with one wrapped in clothing. A search of the two rear doors revealed gun magazines and two handheld radios. A long gun was located in the rear hatch door panel. The driver's door contained two additional firearms. Dispatch reported Gebrezghi's criminal history to the troopers on scene, which indicated a previous charge of trafficking firearms in 2010 and a connection with United States Probation in California.

Ultimately, law enforcement seized thirteen firearms, some of which were loaded, bulk cash, several firearm magazines, and a cellular device that was later searched pursuant to a federal search warrant. The defendant seeks to suppress the seized items, arguing that officers

[2] Trooper Jones informed Gebrezghi he was observed drifting to the white line. Jones explained that the troopers planned to make the stop and allowed Gebrezghi's vehicle to go by. After Gebrezghi drove by the troopers, the vehicle drifted over again.

lacked reasonable basis to effectuate a stop and that the subsequent search exceeded the scope of defendant's purported consent.

**Argument**

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. A traffic stop entails a seizure for purposes of the Fourth Amendment. *Brendlin v. California*, 551 U.S. 249, 254 (2007) (citations and internal quotation marks omitted.; *see also United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004). Traffic stops, whether supported by probable cause or a reasonable suspicion, are treated as *Terry* stops. *Brigham*, 382 F.3d at 506 (citations omitted).

Under *Terry*, the legality of a stop is tested in two parts: (1) whether the officer's action of stopping the vehicle was justified at its inception; and (2) whether the officer's actions were reasonably related in scope to the circumstances that justified the stop. *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 19-20 (1968)).

"A traffic stop is justified at its inception when an officer has 'an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle.'" *United States v. Walker*, 49 F.4th 903, 907 (5th Cir. 2022) (quoting *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005)). "[R]easonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure." *Id.* "Reasonable suspicion is a low threshold; it is not probable cause." *Id.* (citing *United States v. Castillo*, 804 F.3d 361, 364, 367 (5th Cir. 2015)).

"Certainly, then, if officers 'have probable cause to believe that a traffic violation has occurred,' then there is also reasonable suspicion to stop the vehicle." *Id.* (quoting *Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996)). "Criminal activity" justifying a *Terry* stop includes traffic violations, however minor. *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977) (per curiam). In making a reasonable suspicion inquiry, a court looks at the "'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *Lopez-Moreno,* 420 F.3d at 430 (quoting *United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002)). "In scrutinizing the officer's basis for suspecting wrongdoing, it is clear that the officer's mere hunch will not suffice." *Id.* (citing *Terry,* 392 U.S. at 27, 88 S.Ct. 1868). "It is also clear, however, that reasonable suspicion need not rise to the level of probable cause." *Id.* (citing *Arvizu,* 534 U.S. at 274, 122 S.Ct. 744).

The second prong of *Terry* is generally satisfied if the detention is temporary and lasts no longer than is necessary to effectuate the purpose of the stop. *Lopez-Moreno*, 420 F.3d at 430 (citing *Brigham*, 382 F.3d at 507). The stop may be prolonged if further reasonable suspicion, supported by articulable facts, emerges. *Brigham*, 382 F.3d at 507 (citing *United States v. Dortch,* 199 F.3d 193, 198 (5th Cir.1999); *United States v. Machuca–Barrera,* 261 F.3d 425, 434 (5th Cir. 2001)).

## I. State Troopers observed a traffic violation, justifying a stop.

The state troopers personally observed Gebrezghi operate a vehicle in a careless manner. Trooper Jones informed Gebrezghi the reason for the stop was that he had drifted onto the white line and that when the troopers planned to initiate a stop, they observed Gebrezghi again drift toward the line.

The Mississippi careless driving statute provides: Any person who drives any vehicle in a careless or imprudent manner, without due regard for the width, grade, curves, corner, traffic and use of the streets and highways and all other attendant circumstances is guilty of careless driving. Careless driving shall be considered a lesser offense than reckless driving.[3] Miss. Code Ann. § 63-3-1213. As the Fifth Circuit has observed, the state statute is "broadly worded." *United States v. Rosales-Giron*, 592 Fed. App'x 246, 251 (5th Cir.2014).

The Mississippi Court of Appeals has noted that "[c]arelessness is a matter of reasonable interpretation, based on a wide range of factors. *Henderson v. State*, 878 So. 2d 246, 247 (Miss. Ct. App. 2004). In *Henderson*, "[t]he officer witnessed the vehicle that Henderson was driving approach the curb twice." The state appellate court determined "[t]his indicates that Henderson was driving without due regard for the width and use of the street. The officer's observations were enough for him to determine that careless driving had taken place." *Id.* Mississippi appellate courts have routinely upheld similar instances of careless driving. *Rosales-Giron*, 592 Fed. App'x at 251; *see Martin v. State*, 43 So. 3d 533, 533 (Miss. Ct. App. 2010); *Dominick v. State*, 108 So. 3d 452, 455-56 (Miss. Ct. App. 2012). The *Dominick* Court determined probable cause existed where the officer testified that the car "bumped" or "simply rode" the fog line prior to changing lanes, even though the video was not clear. In doing so, the Mississippi Court of Appeals noted its precedent in *Martin*, stating in that case, the appellate court found "sufficient probable cause existed where a vehicle bumped the fog line of a county highway." *Id*.

The Fifth Circuit has relied on state appellate authority to explain the precedent includes varying incidences of conduct deemed to be carelessness. *Rosales-Giron*, 592 Fed. App'x at 251.

[3] In contrast, the more serious of offense of reckless driving provides that "[a]ny person who drives any vehicle in such a manner as to indicate either a wilful or a wanton disregard for the safety of persons or property is guilty of reckless driving." Miss. Code Ann. § 63-3-1201.

The Court summarized, "from this broad language and the cited cases that a traffic stop for careless driving is justified in Mississippi when a law enforcement officers observed an automobile hit the fog line," even if that occurs only once. *Id.*

A law enforcement officer personally observed the defendant's vehicle drift to the white line, and as explained to Gebrezghi, troopers planned to initiate a traffic stop. Then both troopers observed Gebrezghi's SUV drift toward the white line a second time after pulling in behind the vehicle.[4] Notably, the troopers had not been provided any previous information on Gebrezghi or the vehicle, and therefore, were not scrutinizing the vehicle to try and develop independent probable cause. In fact, Gebrezghi was not under any type of investigation until troopers recovered the firearms during the search.

Based on the troopers' observations, probable cause existed to believe that the traffic violation of careless driving had been committed. In the alternative, the troopers had reasonable suspicion to effectuate the traffic stop.

## II. <u>Probable cause existed to search the vehicle.</u>

The state troopers conducted a search of Gebrezghi's vehicle after determining marijuana was in the vehicle. Trooper Jones smelled marijuana when he arrived at the passenger window, and Gebrezghi stated to the troopers that he had a small amount of marijuana inside the vehicle, located in the driver's side door.

"It is well settled that warrantless searches of automobiles are permitted by the Fourth Amendment if the officers have probable cause to believe that the vehicle contains contraband or other evidence of a crime." *United States v. McSween*, 53 F.3d 684, 686 (5th Cir. 1995) (citations omitted). The Fifth Circuit has repeatedly held that the detection of the odor of marijuana

---

[4] In addition to the troopers' personal observations of the second drift toward the white line, the forward-facing dash camera captured the conduct.

justifies a search of the entire vehicle. *See id.*; *United States v. Reed*, 882 F.2d 147, 149 (5th Cir. 1989) (the detection of the odor of marihuana justified a search of the entire vehicle, including the locked compartment that was a likely place to conceal contraband); *United States v. Henke*, 775 F.2d 641, 645 (5th Cir. 1985); *see also United States v. Ross*, 456 U.S. 798, 823, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982) (when probable cause exists to suspect that the vehicle contains contraband, the search may extend not only to closed containers, but also to a "car's trunk or glove compartment").

In *McSween*, the Fifth Circuit rejected defendant's argument the search should have been limited to the area where the officer detected the marijuana odor (passenger area), and affirmed a full search of the vehicle, including under the hood. Here, the contraband could have been located in any area of the vehicle, including the door panels. As the troopers searched, they noticed a rattling in the passenger door and noted the window would not roll down all the way. The officers concluded something was stored within the door and legally searched that part of the vehicle.

Defendant argues the officers exceeded the scope of his voluntary consent. In doing so, Gebrezghi seemingly conflates scope of an officer's actions under *Terry* with scope of consent. The state troopers never asked for Gebrezghi's consent, but rather, told him a search would occur. The search was not based on consent.

Regardless, whether Gebrezghi consented to a search of his vehicle is immaterial. The trooper's perception of the presence of marijuana, as well as Gebrezghi's separate admission of the presence of marijuana, established probable cause. The presence of illegal contraband in the vehicle eliminates the Court's necessity to determine whether Gebrezghi provided consent, and therefore, whether Gebrezghi limited consent in any manner. Pursuant to *Terry*, the officers acted

reasonably in scope to the circumstances because the presence of marijuana provided probable cause for the search prior to the officers concluding the stop's justifications.

**Conclusion**

State troopers were justified in stopping Gebrezghi's vehicle after witnessing a traffic violation. The troopers' perception of marijuana and Gebrezghi's admission of the contraband established probable cause to search the entire vehicle. The subsequent search and seizure of firearms and other items during the search were, therefore, lawful. For these reasons, there was no violation of the Fourth Amendment.

Respectfully submitted, this, the 23rd day of October, 2025.

CLAY JOYNER
United States Attorney

By: *_/s/ Julie Howell Addison_*
JULIE HOWELL ADDISON
Assistant United States Attorney
Mississippi Bar No.103573
900 Jefferson Avenue
Oxford, Mississippi 38655
T: (662) 234-3351
Fax: (662) 234-0657

**Certificate of Service**

I, Julie Howell Addison, Assistant United States Attorney for the Northern District of Mississippi, hereby certify that I electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to:

Mark McClinton
Counsel for Defendant

This, the 23rd day of October, 2025.

*/s/ Julie Howell Addison*
JULIE HOWELL ADDISON
Assistant United States Attorney